# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 1564 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, John Brown, seeks judicial review of a final decision denying his application for disability insurance benefits, under Sections 405(g) and 416(i) of the Social Security Act. 42 U.S.C. §§ 405(g), 416(i) (2005). Mr. Brown filed an application for Disability Insurance Benefits on April 12, 2002, alleging he became disabled on June 4, 2001 due to a knee injury and diabetes (R. 68). Mr. Brown's application was initially denied on August 26, 2002 (R. 22-25).

In his request for reconsideration dated September 13, 2002, the plaintiff's concerns were that he "can't work due to knee and diabetes problems" (R. 26). By the time the administration received his Development Summary Worksheet on September 20, 2002, the plaintiff cited "diabetes, knee problems, and loss of vision" as the reasons for his disability claim (R. 109). The Social Security Administration Office of Hearings and Appeals denied Mr. Brown's application after reconsideration on November 26, 2002 (R. 28-31).

When he requested a hearing by an ALJ on December 6, 2002, Mr. Brown complained of knee pain, diabetes, and poor vision (R. 32). On June 18, 2003, he completed a medical treatment

form to submit to the Social Security Administration Office of Hearings and Appeals, citing his diagnoses as "diabetes mellitus, peripheral neuropathy, and severe arthritis of both knees" (R. 170).

On June 18, 2003, an administrative hearing was held before an Administrative Law Judge ("ALJ"). During the hearing, Mr. Brown, who was represented by counsel, testified to suffering from diabetic neuropathy and visual impairment in addition to the above-listed conditions, and further claimed that his knee pain is exacerbated by his obesity (R. 203, 206-208). Although he did not include arthritis as one of the ailments he discussed in his testimony, his treating physician indicated that the plaintiff suffered from arthritis of the knee and probably the hips (R. 150-151).

Mr. Brown's benefits claim was denied by the ALJ in a written decision dated August 25, 2003 (R. 11-19). The ALJ determined that Mr. Brown was not disabled because he retained the residual functional capacity ("RFC") to perform the full range of sedentary work (R. 18-19). Based on Mr. Brown's vocational characteristics and RFC, the ALJ applied Medical-Vocational Rule 201.24 (the "Grid") to direct a finding of "not disabled" (R. 18). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2 (2005). Mr. Brown, through his attorney, sought review of the ALJ's decision on October 20, 2003 (R. 10). The Appeals Council denied Mr. Brown's request for review on December 24, 2003, making the ALJ's decision the final decision of the Commissioner (R. 5-7). This lawsuit followed.

Mr. Brown now seeks summary judgment reversing the Commissioner's decision, or in the alternative, remanding the case for further proceedings (doc. # 12). 42 U.S.C. § 405(g) (2005). The Commissioner has filed a cross-motion for summary judgment to affirm the decision below (doc. # 16). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case has been assigned to this Court for all proceedings, including the entry of final judgment (doc. # 7). 28 U.S.C. §

636(c)(2005).  For the reasons stated below, the Court grants the government's cross-motion for summary judgment (doc. #16) and denies the plaintiff's motion for summary judgment (doc. # 12).

## I.

The following facts are taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision.  The Court will discuss Mr. Brown's personal and medical history in Subpart A, followed by a summary of the hearing testimony and the ALJ's written decision in Subpart B.

## A.

Mr. Brown was born on May 8, 1961, making him 42 years old at the time of the hearing (R. 57).  He married Alice Jackson on December 1, 1990, but they divorced on June 1, 1995 (R. 64). He has no children (R. 64).  Mr. Brown, now single, temporarily lives with a friend in Evanston, having lost his job and then his home (R. 183-185).  He measures 6 feet, 1 inch to 6 feet, 2 inches tall and weighs approximately 350 pounds (R. 150, 201).[1]  Mr. Brown attended the James Wadsworth School in Chicago, IL, from 1968 until 1975, where he completed the 8th grade (R. 74). While in school, he enrolled in special education classes (R. 74).

Mr. Brown's previous work experience as a warehouse manager at Food Stuffs, a gourmet grocery store, from August 24, 1985 to June 4, 2001 (R. 69)[2] required that he work about 55 to 70 hours a week (R. 90, 196).  Mr. Brown worked his way up from washing dishes and mopping floors to becoming a shipping and receiving manager, but lost his job during a corporate reorganization (R. 193-196).  Subsequently, he worked part-time, without special conditions, in many temporary

---

[1] Medical examinations measure Mr. Brown ranging from 6 feet, 1 inch to 6 feet, 2 inches tall and weighing 330 pounds to over 350 pounds.  The Court does not find the discrepancies in height or weight to be material.

[2] Elsewhere in the record, the plaintiff states that he worked at Food Stuffs from August 25, 1985 to June 7, 2001 (R. 172).  The Court does not find this minor discrepancy to be material.

positions from 2001 until the present (R. 82-84, 202). Mr. Brown worked as a janitor for J.R. Bee from May to July 2002 (R. 172), in a day care center in 2002 (R. 89), for the Bridge Personnel Corporation in 2002 (R. 61), for Ameri-Clean Commercial from 2001 to 2002 (R. 82-83, 172), and for Office Max in April 2003 (R. 172). In February 2002, Mr. Brown also worked part-time, without special conditions, as a stocker for Five Star Distributing (R. 82-83). Two weeks before the administrative hearing, Mr. Brown had resumed part-time work at Food Stuffs (R. 202).

The medical records relevant to Mr. Brown's knee injury and diabetes date from June 4, 2001, when he first alleges being unable to work (R. 68). In the disability report Mr. Brown completed on April 25, 2002, he indicates that his conditions first "bother[ed]" him on November 11, 1999 (R. 68). On that date, he tripped on a crate, fell, and ruptured his left quadriceps tendon, separating it from the patella (R. 126). Dr. Richard A. Geline of the St. Francis Hospital in Evanston performed surgery on Mr. Brown (R. 126-127). At the time, the x-rays of the left knee were "unremarkable" and neurological examination showed "grossly intact motor power except for power of extension of the left knee" (R. 119). Mr. Brown was already treating his Type II diabetes mellitus with Glucotrol (glipizide) and his hypertension with Vasotec (R. 123, 126). Prior to this surgery, Mr. Brown had undergone operations on his feet to remove a bunion on the ninth toe (1997) and corns on the fifth toes (1996) (R. 122).

Dr. Geline reported that Mr. Brown tolerated the surgery well and returned to the recovery room in satisfactory condition (R. 128). Dr. Geline reexamined Mr. Brown regularly, and by June 5, 2000, the physician determined that Mr. Brown's left knee had a range of motion equivalent to that of his right knee and noted that Mr. Brown was "working at a full-time capacity" (R. 143). On July 28, 2000, Dr. Geline referred Mr. Brown to the Physical Therapy Department to strengthen the

left quadriceps muscle (R. 144). In subsequent re-examinations through the end of 2000, Dr. Geline advised that Mr. Brown continue physical therapy (R. 145-147). By the time of his examination in December 2000, Mr. Brown had switched to Glucophage for his diabetes and had no neurological or psychological problems (R. 148).

Mr. Brown has also received treatment from Dr. Hazel Hernandez, a podiatrist who treated him for diabetic foot pain from 1999 through September 19, 2001 (R. 71). The Development Summary Worksheet indicates he visited Dr. Hernandez again on July 3, 2002 (R. 115). Although Mr. Brown states that she performed surgery on both of his feet (R. 71, 191), Dr. Hernandez failed to send his medical records into the Social Security Agency (SSA) (R. 190). At the time of the hearing, Mr. Brown's attorney stated that he "may or may not keep the record open, although Dr. Schwartz does discuss the diabetes problems and all the problems with the diabetes problem..." (R. 191). Mr. Brown stated that since his COBRA expired, he has not been able to visit or contact Dr. Hernandez (R. 191).[3]

Mr. Brown's treating physician since 1994 has been Dr. Sheldon Schwartz (R. 70). On June 10, 2002, Dr. Schwartz completed a medical report for the Bureau of Disability Determination Services ("DDS"), diagnosing Mr. Brown with morbid obesity, insulin dependent diabetes mellitus, severe arthritis of the knees, hypertension and depression (R. 150). He also noted that Mr. Brown suffers from a "marked limp due to arthritis of the knee" and "mild neuropathy" (R. 150). The report suggests that Mr. Brown has been complying with his therapy of Vasotec and Glucotrol (glipizide) (R. 150). In the space provided in the report form for a listing of visual or retinal complications, Dr. Schwartz listed none, and specifically stated that Mr. Brown had no marked

---

[3] Mr. Brown's attorney made no subsequent attempt to supplement the hearing record with further information from Dr. Hernandez.

5

restriction of visual fields (*Id.*). Dr. Schwartz identified Mr. Brown's "main problem" as obesity (*Id.*). In response to a question asking for a description of Mr. Brown's ability to do work-related activities, Dr. Schwartz listed no limitations, and affirmatively stated that Mr. Brown "can sit," and "moves about fairly well" (*Id.*).

One week later, Dr. Schwartz called DDS to provide further information about Dr. Brown. In that telephone conversation, Dr. Schwartz stated that Mr. Brown "needs to be on insulin, which he refuses to take, so he is on oral medications" (R. 151). Dr. Schwartz also stated that Mr. Brown's severe hypertension has caused blurred vision and that "he has peripheral neuropathy in his lower extremities" (R. 151). He observed that Mr. Brown "has a wide based gait and uses a cane" and suffers from "severe arthritis in his knees and most likely in his hips" (R. 151). In closing, Dr. Schwartz stated that he did not believe that the plaintiff "can sustain work at this time due to his multiple medical conditions" (R. 151). Thereafter, on May 15, 2003, Dr. Schwartz completed disability forms on behalf of Mr. Brown when he sought subsidized housing at the Bethesda Village in Zion (R. 168-169). In these forms, Dr. Schwartz stated that the plaintiff's disabilities include diabetes mellitus, peripheral neuropathy, and severe arthritis of the knees (R. 169). According to the physician, these disabilities began in July 2002 (R. 169) – the month after Dr. Schwartz's oral report to DDS.

Upon request of DDS, Dr. Scott A. Kale conducted an internal medicine consultative examination on July 31, 2002 (R. 152). Dr. Kale determined that plaintiff had "painful dysesthesias in the right, greater than left, lower extremity undoubtedly related to his diabetes" (R. 152). Dr. Kale stated that (contrary to Dr. Schwartz's oral report one month earlier) Mr. Brown denied having an altered gait, and stated that "activities of daily living are intact" (R. 152). Mr. Brown's eyes were

normal with a corrected vision of 20/25 in the right eye and 20/20 in the left eye (R. 153). Dr. Kale's examination of the Mr. Brown's musculoskeletal system revealed no abnormalities (R. 153). Despite the well-healed surgical scar over the left patella, he noted full range of motion and normal strength of all joints (R. 154). In addition, Mr. Brown bore his own weight, had a normal gait, and could tandem gait, walk heel-to-toe, and hop on one leg (R. 154). The physician observed that Mr. Brown was able to squat, get on and off the table, and "did not need an assistive device to ambulate." Dr. Kale also observed that Mr. Brown's mental status was normal and pleasant (R. 154). Neurologic examination showed no focal deficits, but a "decreased sensation to light touch with a cotton swab in the hands and feet..." (R. 154). In summary, Dr. Kale found four problems: (1) poorly controlled diabetes; (2) poorly controlled hypertension; (3) painful diabetic neuropathy in the lower extremities; and (4) obesity (R. 154-155).

Based on the reports by Dr. Schwartz and Dr. Kale, Dr. Harry Bergman, a medical consultant, signed an RFC assessment that was reviewed and approved by Dr. Paul E. Smalley, a supervising doctor (R. 156-163). The RFC indicated Mr. Brown's ability to lift 10 pounds occasionally and 20 pounds occasionally; can stand, walk, or sit for about six hours in an eight-hour workday; was not limited in his ability to push or pull; had no limits on his ability to balance and stoop, and had some limits on his ability to climb, crouch, crawl, and kneel; and had no visual or manipulative limits (R. 157-59). On August 15, 2002, Ms. Brown recommended that Medical-Vocational ("grid") Rule 202.18 should be applied to Mr. Brown, because his RFC limited him to light work (R. 106).[4]

---

[4] Rule 202.18 applies to claimants who have a "maximum sustained work capacity limited to light work as a result of severe medically determinable impairment(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2 (2005).

On October 18, 2002, Dr. Yoginder Kumar completed a diabetic report for DDS (R. 164). Dr. Kumar reported that Mr. Brown's first onset of diabetes occurred eleven years earlier (R. 164). He also determined that Mr. Brown has peripheral neuropathy, as well as edema and varicose veins (R. 164).

## B.

At the administrative hearing, Mr. Brown testified that since he left his position as warehouse manager on June 4, 2001, the alleged onset date of his disabilities, he has only worked in temporary positions, limited in terms of the number of hours or the duration of employment (R. 202). Both the ALJ and Mr. Brown's attorney questioned him about his employment history. Mr. Brown testified that, despite naming him "employee of the year," Food Stuffs terminated his position as warehouse manager when it decentralized its organization (R. 193-194). After sixteen years of service with Food Stuffs, Mr. Brown found himself without benefits other than COBRA, which ran out in mid-2002 (R. 191, 194). Although Food Stuffs continued paying his COBRA for five to seven months after it expired, Mr. Brown had insufficient income to qualify for the low-income housing at the Bethesda Village in Zion (R. 213-214). He testified to having experienced difficulty finding subsequent employment at Dominick's, Jewel, and Home Depot (R. 196-199).

Mr. Brown attributes his failure at finding a new job to his eighth-grade education and difficulties learning, reading, and writing (R. 196-199). He tries to keep up with current events, but he enrolled in special education while in school, cannot spell certain words on a grocery list, and needed another person to read to him most of the notices and letters from Social Security (R. 199-200). While employed for sixteen years at Food Stuffs, he claimed to have recognized groceries largely by colors and size (R. 200). However, Mr. Brown did not answer affirmatively when the

8

ALJ asked if he had applied for sedentary jobs requiring little skill, such as a motel receptionist (R. 196). He testified that, since leaving Food Stuffs, he worked for Ameri-Clean Commercial emptying garbage cans and vacuuming "back and forth for about a year to a couple years... one and a half hours a night" for four or five nights a week (R. 203-204). Mr. Brown stated that, two weeks prior to the administrative hearing, Food Stuffs re-hired him to work three and a half to four hours a day (R. 202).

### 1.

The plaintiff's alleged knee problems stem from a surgery that happened almost two years prior to the alleged onset date of his disabilities (R. 68). At the hearing, Mr. Brown testified that he had knee surgery, recovered, and then returned to work (R. 206). He stated that the surgery made his leg sometimes feel "rubbery," and partially because of his weight has caused him to fall down multiple times (R. 206). His knee surgeon advised him not to lift 60 or 70 pounds, which he had done as part of his job prior to the surgery (R. 206).

### 2.

Only Mr. Brown's attorney questioned him about his current disabilities at the administrative hearing. When prompted by his attorney, Mr. Brown stated that the doctor he visited two weeks earlier found him to be obese at 6 feet, 2 inches and over 350 pounds (R. 201). Mr. Brown testified that he has been having physical difficulties performing in his current part-time capacity at Food Stuffs (R. 203). Specifically, Mr. Brown said his diabetes is "a little out of control," he has vision problems but cannot afford a visit to an eye doctor, and he cannot stand for long because of his knee and neuropathy problems (R. 203).

**3.**

Mr. Brown testified that he suffers from diabetic neuropathy, which causes pain in his feet and legs, but he cannot afford the insulin to treat his diabetes, the underlying cause of his nerve damage (R. 210-211). The plaintiff did not comply with insulin shots for the three to four years following his diabetes diagnosis in 1992 or 1993 (R. 218-219). Consequently, around 1996 or 1997, his doctors switched him to oral medication (R. 219).[5] He now relies on free samples from his treating physician, Dr. Schwartz (R. 210).

At the administrative hearing, Mr. Brown's attorney emphasized Dr. Schwartz's medical analysis and argued that Mr. Brown met the requirements of listing 9.08A— diabetic neuropathy with sustained disturbance of gait (R. 216-217). After June 4, 2001, but before his COBRA ran out, Mr. Brown visited a podiatrist, Dr. Hazel Hernandez, to treat the neuropathy in his feet (R. 191). Mr. Brown told Dr. Hernandez that he experienced "sharp pains" in his feet, and Dr. Hernandez said his condition was "only getting worse" (R. 191). Although the ALJ had not received Dr. Hernandez's records, Mr. Brown's attorney stated that they would merely corroborate the testimony of Dr. Schwartz, plaintiff's treating physician (R. 191-192). In response, the ALJ stated that he would take the plaintiff's attorney's "offer of proof on that" (R. 192). The ALJ also noted that Mr. Brown had an updated prescription for Glucophage, an oral diabetes medication, which Dr. Schwartz had dated June 5, 2004 (R. 189).

**4.**

Mr. Brown's attorney questioned him about how his disabilities affected his work and daily activities. The plaintiff testified that, although he recovered from his knee surgery and returned to

---

[5] The oral medications prescribed to Mr. Brown, such as Glucotrol (glipizide) or Glucophage, are not themselves forms of orally-administered insulin.

working at Food Stuffs, his left knee deteriorated and now limits him to lifting five pounds (R. 206-207). Mr. Brown claimed that his knee made his job difficult, because the unionized truck drivers would only deliver boxes to Food Stuffs's rear receiving dock where he would have to load a hand truck, pull the boxes back to the store, price each box, and then separate the order for the three other stores (R. 215-216). His boss offered to have other people help Mr. Brown with certain tasks, but most employees were too busy with their own jobs (R. 216). Mr. Brown testified that he has only been working part-time to get the money he needs to live, but that he cannot find a full-time job because his knee prohibits him from standing for more than four to six hours (R. 209). Mr. Brown testified that he even has had problems completing part-time jobs, because he experiences pain in his knee when he climbs stairs (R. 209). He also claimed that he can sometimes walk only short distances, has a gait problem, occasionally uses a cane, and can generally sit 15-20 minutes before he has to stand due to knee pain (R. 207, 212). Likewise, Mr. Brown stated that his knee pain prevents him from driving for long periods of time without stopping along the side of the road to stand up (R. 212). Nevertheless, Mr. Brown contradicted his own account of the severity of his knee pain by testifying that he favored walking on his left knee (R. 207), the knee that required surgery, and by not bringing a cane with him to the hearing (R. 212).

### D.

The ALJ issued his decision on June 18, 2003, which applied the sequential five-part evaluation pursuant to 20 C.F.R. §§ 404.1520 and 416.920 (2005). At Step 1, the ALJ reserved a finding on whether Mr. Brown had engaged in substantial gainful activity since the alleged onset date of his disability (June 4, 2001), because the facts about his part-time employment "are not fully known and the outcome would not be materially affected" (R. 15, 18).

At Step 2, the ALJ found that Mr. Brown's impairments met the definition of "severe," but he discussed the Step 2 determination in conjunction with his determination of the plaintiff's residual functional capacity ("RFC") at Step 4 (R. 15, 18).

At Step 3, the ALJ found that Mr. Brown's impairments did not meet or medically equal any of the impairments listed in the Appendix 1 to Subpart P, Regulations No. 4 (R. 15). 20 C.F.R. Pt. 404, Sbpt. P., App. 1 (2005).[6] The ALJ stated that, to meet listing 9.08A for diabetic neuropathy, the claimant must demonstrate significant and persistent disorganization of motor function in two extremities (R. 15). If the legs are involved, then there must be sustained disturbance of gait and station (R. 15). According to the ALJ, Dr. Schwartz (the treating physician) reported that Mr. Brown has a wide-based gait and uses a cane; however, Dr. Schwartz failed to show sufficient disruption of gait to meet the requirements of listing 9.08A (R. 15). Dr. Schwartz also reported that the peripheral neuropathy was "mild" (R. 15, 150). In addition, the ALJ found that the record as a whole failed to demonstrate a disruption of gait, as opined by Dr. Schwartz, and in fact was contradicted by the report of the consultative examiner and the claimant's own denial of "altered gait" (R. 15). Furthermore, the ALJ noted that the record suggested that the claimant's main problem was obesity, rather than diabetes (R. 15).

At Step 4, the ALJ determined that Mr. Brown's RFC precluded him from performing his past relevant work as either a warehouse manager or a janitor (R. 18-19). In assessing Mr. Brown's RFC, the ALJ evaluated Mr. Brown's medical records, his testimony, and other consulting physicians' observations regarding his knee pain, obesity, diabetes, vision problems and hypertension (R. 18). The ALJ mentioned that Mr. Brown's knee surgery had occurred more than

[6] 20 U.S.C. § 416.926: Medical equivalence for adults and children, defines the requirements that a claimant must meet to show that he suffers from a condition that medically equals a listing. It is discussed further in Section III. A.2. *infra.*

a year and a half prior to his disability onset date, and he cited medical records demonstrating that the plaintiff had recovered, returned to work, and occasionally felt weakness, but not pain (R. 16). The ALJ discredited Dr. Schwartz's diagnosis of "severe" arthritis in the knees and "most likely in the hips," since neither clinical nor laboratory findings suggested a finding of any arthritis (R. 16).

The ALJ found that Mr. Brown's allegations of disabling symptoms and limitations were not entirely credible, primarily due to conflicts in the medical record (R. 16-18). Although he stated that the plaintiff is "morbidly obese," the ALJ discounted obesity as a physical impairment by citing the consultative medical examination during which the claimant exhibited no difficulty performing any mobility tests such as getting on and off the examination table, squatting, and hopping on one leg (R. 16). The ALJ noted that Mr. Brown suffers from diabetes and hypertension, but found that the plaintiff's refusal to take insulin and his failure to provide details in his daily living questionnaire diminished the credibility of the claimant's allegations (R. 16-17). He further stated that there does not appear to be "any end organ involvement from either condition" (R. 16). While one physician observed pitting edema and varicose veins, another physician observed "no trophic changes, varicosities, or edema" two weeks earlier (R. 16).

Furthermore, the ALJ found that Dr. Schwartz's assessment of Mr. Brown's status was either not supported or even contradicted by the medical records, contemporaneous progress notes, or clinical observations (R. 17). As stated earlier, Dr. Schwartz changed his diagnosis from "mild" peripheral neuropathy to severe peripheral neuropathy within a week (R. 15). In addition, while Dr. Schwartz observed "deteriorating" and "blurred" vision due to severe hypertension, a separate medical examination one month later showed that the plaintiff's corrected vision was 20/25 (right) and 20/20 (left) and revealed no vascular damage of the fundi (R. 16-17). Although Dr. Schwartz

diagnosed the plaintiff as having depression, the consultative exam disclosed no mental or memory abnormalities, and the plaintiff was observed to be "appropriate, polite, pleasant, and cooperative" (R. 17). Ultimately, the ALJ rejected Dr. Schwartz's assessment of the plaintiff as being unable to "sustain work" or "engage in any gainful activity" (R. 17). In addition to the contradictions elsewhere in the record, the ALJ criticized the treating physician for couching his opinion in a "legalistic and conclusory manner, rather than in the more descriptive and useful terms of functionality" (R. 17).

Accordingly, the ALJ found that the plaintiff's medically-determinable impairments preclude "lifting more than 10 pounds; and standing and/or walking for more than a total of 2 hours in an eight hour workday" (R. 15). While these limitations prevented him from returning to his past work, the ALJ found that Mr. Brown retained the RFC to perform the full range of unskilled sedentary work (R. 18-19).

At Step 5, the ALJ used "the grid" Table No. 1, which assesses individuals with an RFC that allows a "Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1 (2005). The 42-year-old claimant is a "younger individual age 18-44;" of "limited [education] or less – at least able to communicate in English;" and previously employed in an "unskilled [job] or none." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.24 (2005). Using Medical-Vocational Rule 201.24, the ALJ found that Mr. Brown is not disabled and, therefore, not entitled to Disability Insurance Benefits (R. 18). In so doing; the ALJ elected not to follow Karen Brown's August 15, 2002, recommendation that he should use grid rule 202.18 (for a claimant who has a "maximum sustained work capacity limited to light work as a result of severe medically determinable impairment(s)") (R.

106). 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2 (2005). However, either Rule 202.18 or Rule 202.24 would direct a finding of "not disabled" (R. 18, 106).

## II.

We begin with a brief overview of the relevant legal standards. To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) (2005). A claimant must demonstrate that his impairments prevent him from performing not only his past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A). The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 (2005). Under this test, the ALJ must consider: (1) whether the claimant is presently unable to work; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform her past relevant work based upon the claimant's residual functional capacity ("RFC"); and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) (2005); *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992). A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (quoting *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000)). The Court must accept the findings of fact which are supported by "substantial evidence" (42 U.S.C. §§ 405(g) (2005)), defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

That said, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. See *Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence."

*Id.*; *see also Young*, 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See*, e.g., *Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This is especially true regarding credibility determinations, since both the case law and the regulations require an ALJ to minimally articulate the specific reasons for the credibility finding. *Zurawski*, 245 F.3d at 887. Specific reasons are required so that the reviewing Court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). Nevertheless, the reviewing Court need not "remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

### III.

Mr. Brown makes two challenges to the ALJ's determination that he is not disabled. *First*, at Step 3, Mr. Brown argues that the ALJ improperly found that the claimant's impairment did not "meet or equal" listing 9.08A, diabetes mellitus with neuropathy. 20 C.F.R. §§ 404.1520(a)(4)(iii) (2005). *Second*, at Step 5, Mr. Brown argues that the ALJ erred in finding that the claimant was able to perform other work in the national economy because he disregarded the opinion of Dr. Schwartz. 20 C.F.R. §§ 404.1520(a)(4)(v) (2005). For the reasons set forth below, the Court finds that the determinations at Step 3 and Step 5 were both proper. We address the plaintiff's challenges in turn.

## A.

A Step 3 finding requires a claimant to prove that his impairments meet or equal any listed disability found within 20 C.F.R. Part 404, Appendix 1, Subpart P. *Young*, 957 F.2d at 389. Mr. Brown asserts that the ALJ disregarded evidence that would speak directly to the issue of whether or not the plaintiff's condition met listing 9.08A, *i.e.*, diabetes mellitus with "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station" (Pl.'s Mem. at 3-5; 20 C.F.R. Pt. 404, Sbpt. P., App. 1 § 9.08A (2005)). In addition, Mr. Brown argues that the ALJ did not adequately consider whether the combination of his diabetic neuropathy, obesity, and arthritis medically equaled a listed impairment (Pl.'s Mem. at 4-5). We will address each of these alleged errors separately.

### 1.

Mr. Brown first alleges that the ALJ failed to sufficiently consider characterized the "painful" nature of his diabetic neuropathy and the location of the pain in both of his legs in determining whether his condition met listing 9.08A (Pl.'s Mem. at 4-5). Mr. Brown asserts that the ALJ should not have discounted Dr. Schwartz's stated opinions that Mr. Brown has "peripheral neuropathy in his lower extremities" and a "wide based gait and used a cane" (R. 15, 151), because Dr. Schwartz "took the additional affirmative step of contacting the investigative agency of the Commissioner . . . to emphasize that the diabetic condition had caused peripheral neuropathy in both legs and that Plaintiff additionally suffered from severe arthritis" (Pl.'s Mem. at 3). In addition, Mr. Brown faults the ALJ for omitting the assessment of Dr. Kale, the consultative physician, who

found that the plaintiff suffered from "painful diabetic neuropathy in the lower extremities" (R. 155).

The Court is not persuaded by Mr. Brown's argument. Listing 9.08A requires that to qualify as a disability, neuropathy must involve "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Sbpt. P., App. 1 § 9.08A (2005). The opinions of Dr. Schwartz, even if fully credited, do not support this listing. Although Dr. Schwartz's oral opinion stated that Mr. Brown has "peripheral neuropathy in his lower extremities," and a "wide based gait and uses a cane" (R. 151), Dr. Schwartz failed to indicate that the wide based gait and use of a cane resulted in "significant and persistent disorganization of motor function in two extremities" or that diabetes was a causal factor, as required by listing 9.08A. 20 C.F.R. Pt. 404, Sbpt. P., App. 1 § 9.08A (2005). Moreover, in an earlier written report, Dr. Schwartz characterized Mr. Brown's peripheral neuropathy as "mild" (R. 150). In addition, Dr. Schwartz's observations do not indicate that Mr. Brown suffers from "*sustained* disturbance of gait and station." 20 C.F.R. Pt. 404, Sbpt. P., App. 1 § 9.08A (2005) (emphasis added). Without more express findings by Dr. Schwartz, the Court is unable to conclude that Mr. Brown, who bears the burden of proof at Step 3, had demonstrated an impairment or combination of impairments that meets or equals Listing 9.08A. *See Young*, 957 F.29 at 389.

Furthermore, the ALJ did not disregard Dr. Kale's consultative examination. While Dr. Kale described Mr. Brown's neuropathy as "painful" (R. 155), he also described Mr. Brown's gait as "normal" (based on tandem gait, hop on one leg, and heal-and-toe walk) (R. 154). And, Mr. Brown told Dr. Kale that he did not have an altered gait (R. 152). Listing 9.08 does not expressly require

19

the ALJ to consider the claimant's pain (and plaintiff has offered no authority on this point). Viewing the evidence as a whole, we conclude that the ALJ's conclusion that plaintiff did not meet Listing 9.08 was supported by substantial evidence.

**2.**

Mr. Brown also asserts that the ALJ failed to consider all of his impairments or the aggregate effect of Mr. Brown's impairments when determining whether he has an impairment that "*equals a qualified listing.*" 20 C.F.R. Pt. 404.1520(a)(4)(iii) (2005) (emphasis added). Mr. Brown asserts that the ALJ should have found, regardless of the requirements set forth in listing 9.08A, that the cumulative effect of his diabetic neuropathy, his arthritis, and his obesity medically equal a listed impairment (Pl.'s Mem. at 3-5; 20 C.F.R. Pt. 404, Sbpt. P., App. 1 § 9.08A).

Even if a claimant's condition does not meet the criteria of any listed impairments that give rise to a presumption of eligibility for benefits, he "may still establish presumptive disability by showing that [his] impairment is accompanied by symptoms that are "at least equal in severity and duration to the listed findings." *Boiles v. Barnhart*, 395 F.3d 421, 424 (7th Cir. 2005) (quoting 20 C.F.R. § 416.926(a) (2005)). A claimant may successfully warrant a finding of medical equivalence if he can produce sufficient evidence, such as "symptoms, signs, and laboratory findings," about his impairment or combination of impairments that "are at least of equal medical significance" to a listed impairment or analogue of a listed impairment. 20 C.F.R. § 416.926(a)(1)-(2) (2005). Medical equivalence must be proven by medical evidence, such as medically acceptable clinical and laboratory diagnostic techniques and medical opinion(s) given by one or more medical or psychological consultants assigned by the Commissioner in deciding medical equivalence. 20 C.F.R. § 416.926(b) (2005).

The ALJ need only consider impairments that a claimant actually claims, or those for which a claimant offers enough evidence to fairly raise the impairments as a basis for a claim. *See* 20 C.F.R. 404.1512(a), 404.1516 (2005); *see also Clifford*, 227 F.3d at 873 (ALJ should evaluate the severity of all impairments, including those not claimed that are fairly raised by the evidence). In this case, the ALJ determined that Mr. Brown does not suffer from severe arthritis because Mr. Brown failed to produce sufficient evidence, such as clinical or laboratory findings, to support a diagnosis of severe arthritis (R. 16). The ALJ also noted that Dr. Kale observed that Mr. Brown's knee had normal strength, had normal range of motion, and lacked "redness, swelling or thickening" (R. 154, 162). In addition, Dr. Geline's x-rays of Mr. Brown's left knee showed no sign of arthritis (R. 119). Consequently, the ALJ's determination that the plaintiff did not suffer from severe arthritis is supported by substantial evidence in the record.

Mr. Brown provides no countervailing medical evidence that addresses whether the aggregate effect of his painful diabetic neuropathy, arthritis, and obesity "in combination" is medically equivalent to a listing. 20 C.F.R. § 416.926(b) (2005). Consequently, he cannot satisfy his burden at Step 3. *See Young*, 957 F.2d at 389. Although the ALJ's decision is not in all respects a model of clarity, in the Court's view, his decision minimally articulates the reasoning he used and allows us to trace the path he followed from the medical evidence to his Step 3 decision. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Moreover, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Here, the ALJ's finding that Mr. Brown's condition fails to medically equal a listed impairment is supported by substantial evidence.

**B.**

At Step 5, the burden of proof shifts from the claimant to the Commissioner. Specifically, the Commissioner must prove that the claimant can perform work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) (2005); *see also Young*, 957 F.2d at 389. In this case, the ALJ used Grid Rule 201.24 to find that Mr. Brown was not disabled because he retained the capacity to perform the "full range of sedentary work," which precludes "lifting more than 10 pounds and standing and/or walking for more than a total of 2 hours in an eight hour workday" (R. 18-19). Mr. Brown asserts that the ALJ erred in its Step 5 determination because he rejected Dr. Schwartz's opinion that Mr. Brown suffers from conditions that prevent any sustained employment (Pl.'s Mem. at 3, R. 151).

As indicated previously, Dr. Schwartz stated that Mr. Brown needs insulin, suffers from deteriorating and blurred vision due to severe high blood pressure, has a wide based gait, is obese, and suffers from severe arthritis in the knees and most likely the hips (R. 151). Dr. Schwartz concluded that Mr. Brown "cannot sustain work ... due to his multiple medical conditions" (R. 151). The ALJ, however, discounted Dr. Schwartz's opinion because it was "couched in a legalistic and conclusory manner, rather than in the more descriptive terms of functionality" (R. 17). The ALJ faulted Dr. Schwartz for not providing "specific progress notes contemporaneously documenting his observations and findings" (R. 17). The ALJ also pointed out that, just one week earlier, Dr. Schwartz contradicted his own assessment of Mr. Brown's peripheral neuropathy by describing it as "mild" (R. 15, 150).

It is true that "[a] treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record."

*Dixon v. Massanari*, 270 F. 3d 1171, 1177 (7th Cir. 2001). However, it is the sole province of the Commissioner to determine whether a claimant is disabled: a claimant is not entitled to disability benefits just because his doctor has offered the opinion that he is "disabled." *Id.* When considering Dr. Schwartz's oral opinion in light of his contradictory written opinion, and in light of the other medical evidence, we cannot say that the ALJ patently erred in discounting Dr. Schwartz's opinion that Mr. Brown cannot perform any substantial gainful work activity. Dr. Schwartz offers a conclusory medical opinion that is not supported by clinical or other laboratory findings regarding the specific physical and exertional requirements necessary to sustain gainful employment at the "full sedentary" level. In particular, there is no medical evidence or opinion that Mr. Brown could not lift up to ten pounds, and do "a certain amount" of walking and/or standing.

Instead, Dr. Schwartz's oral opinion simply paints a picture, using medical conclusions (*e.g.*, blurred vision, severe high blood pressure, diabetes mellitus, severe arthritis and wide based gait), of a man with a plethora of medical problems. And, that oral opinion states – without explanation – conditions not in Dr. Schwartz's written opinion just one week earlier. For example, the oral opinion stated that Mr. Brown had blurred vision, when the written report found no visual complications; stated that Mr. Brown had a wide based gait and uses a cane, when the written report stated no such problems and, to the contrary, said Mr. Brown "moves about fairly well"; and stated that Mr. Brown could not sustain work, when the written report noted that Mr. Brown had held jobs. Moreover, Dr. Kale's report contradicted Dr. Schwartz's oral statements, and largely was consistent with Dr. Schwartz's written report. In these circumstances, we find no error in the ALJ's treatment of Dr. Schwartz's opinion. On review of the ALJ's decision at Step 5, our function is to assess whether the ALJ's conclusion that Mr. Brown could perform sedentary work which existed in

substantial number in the regional economy at the time of decision is supported by substantial evidence. To do that, we must first look at the governing regulations. Under the regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.... [A] certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 416.967(a) (2005). The Social Security Rulings clarify that "occasionally" means that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10. The ALJ specifically found that Mr. Brown's RFC was consistent with these exertional requirements. We find no error in that conclusion, as it is consistent with the consultative examination of Dr. Kale, the written report of Dr. Schwartz; and the other medical evidence. And, to the extent that Mr. Brown testified to greater limitation (*see* R. 98, 207), the medical evidence provided a sufficient basis for the ALJ to discount somewhat Mr. Brown's subject self-assessment (R. 17).[7]

Under the ALJ's RFC finding, application of Grid, Rule 201.24 is appropriate. The Court finds that the ALJ's RFC Finding, together with the other non-exertional evidence supports a finding of no disability under the Grid, Rule 201.24. As such, we find that the ALJ's decision that Mr. Brown can perform the full range of unskilled sedentary work is supported by substantial evidence.

---

[7] In finding Mr. Brown's RFC, the ALJ – citing SSR 96-6p – indicated that he gave "no weight" to the RFC findings of Drs. Bergmann and Smalley, in order to provide *de novo* review (R.17). The ALJ was not required to go that far. Under SSR 96-6p, state agency medical and psychological consultants are considered "highly qualified" experts "in the evaluation of the medical issues in disability claims," including issues of residual functional capacity. Accordingly, SSR 96-6p says that ALJs may not ignore those opinions, but must explain the weight they are given. To the extent that the ALJ should have given some weight to those opinions, Mr. Brown suffered no prejudice from the ALJ's failure to do so, since the Bergmann and Smalley RFC assessments only would further support the ALJ's conclusion. As we have said early, neither law nor common sense requires a remand to address a point that would not affect the outcome. *Fisher*, 869 F.2d at 1057.

## CONCLUSION

While we sympathize with Mr. Brown's situation, after review of the record and the Commissioner's decision, the Court finds that the ALJ's decision must be affirmed. For these reasons, the Court grants the Commissioner's cross-motion for summary judgment (doc. #16) and denies the plaintiff's motion for summary judgment (doc. # 12). The Clerk of the Court is therefore directed to enter a final judgment pursuant to 42 U.S.C. § 405(g) (Sentence 4) (2005) and FED. R. CIV. P. 58 and to terminate this case.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: April 15, 2005**